UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | |
|  | : | Case No. 10-cr-87 (GK) |
| JASON TODD REYNOLDS, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Petitioner is Jason Todd Reynolds, an inmate in a federal prison, who was convicted of multiple felonies in 2011. Judgment as to Jason Todd Reynolds [Dkt. No. 73]. In 2014, Mr. Reynolds challenged his conviction under 28 U.S.C. § 2255, arguing that his attorney in his criminal trial had provided him with unconstitutionally ineffective assistance. [Dkt. No. 96]. Mr. Reynolds' Motion to Vacate under 28 U.S.C. § 2255 was fully briefed, and the Court held an evidentiary hearing on February 2 and 3, 2015 ("Evidentiary Hearing"). See Memorandum Order Denying Motion to Vacate at 6 [Dkt. No. 140]. Ultimately, on February 19, 2015, the Court denied Mr. Reynolds' Motion to Vacate his conviction. Id.

Mr. Reynolds now asks this Court to vacate the judgment of February 19, 2015, alleging that various officials within the Bureau of Prisons ("BOP") conspired to keep him from participating in the Evidentiary Hearing, and thereby committed a fraud on this Court and deprived him of his right to due process. Petition for Relief Under Federal Rule 60(b) and 60(d) ("Petition") [Dkt. No. 151]. In addition, Mr. Reynolds brings a number of ancillary claims alleging that: 1) an

individual BOP official violated his constitutional rights; 2) various BOP officials have falsified his prison records, resulting in poorer conditions of confinement and the prospect of more time in prison; and 3) the Department of Justice has violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. After consideration of the Petition, the Opposition [Dkt. No 155], and the Reply [Dkt. No. 158], and the entire record herein, Mr. Reynold's Petition will be **denied.**

## I. BACKGROUND

On January 22, 2014, Mr. Reynolds filed a Motion to Vacate his conviction under 28 U.S.C. § 2255, arguing that his attorney for his trial, Edward Sussman, had provided him with ineffective assistance. [Dkt. No. 96]. Mr. Reynolds was represented by David Bernstein on the § 2255 Motion challenging his conviction. On January 5, 2015, the Court scheduled an Evidentiary Hearing for February 2, 2015. [Dkt. No. 130].

On or around January 14, 2015, the BOP informed Mr. Reynolds that it would not allow him to travel to the Evidentiary Hearing. BOP officials claimed that there had been a chickenpox outbreak at the prison where Mr. Reynolds was held and that medical tests confirmed that he lacked immunity to the chickenpox virus. Therefore, pursuant to BOP protocol, he was not permitted to travel as he posed a transmission risk. On January 21, 2015, Mr. Bernstein filed an Emergency Motion to Compel BOP to produce Mr. Reynolds at the Evidentiary Hearing. [Dkt. No. 131]. On January 28, 2015, the Court held a status conference, by telephone, to discuss the Emergency Motion. Subsequently, after informal negotiations between the Government and Mr. Bernstein, the parties agreed that Mr. Reynolds would appear by video. Exh. E to Opp'n [Dkt. No. 155-5].

The Court then held the Evidentiary Hearing, as scheduled, on February 2 and 3, 2015, and Mr. Reynolds participated by video conference. Transcript of Motions Hearing Volume 1 ("February 2nd Transcript") at 5:19-21 (2015) [Dkt. No. 136]. The transcript of the hearing makes clear that Mr. Reynolds was able to testify fully on the morning of February 2, 2015, despite some technical issues. See id. at 59:19-22 (in which Mr. Bernstein concluded his questioning and Mr. Reynolds was dismissed); see also id. at 9:25-10:1, 55:20-56:2 (discussing technical issues, although confirming that Mr. Reynolds was able to see, hear, and participate). At the conclusion of his testimony, the video feed Mr. Reynolds used to testify was disconnected, and he did not participate in the remaining day-and-a-half of the Evidentiary Hearing. Id. at 60:6-7; Transcript of Motions Hearing Volume 2 ("February 3rd Transcript") at 4:7-10 (2015) [Dkt. No. 137] (noting that Mr. Reynolds was not present for the second day of the Evidentiary Hearing).

In response to the Court's question of whether his client had agreed that he would only testify and not appear electronically for the remainder of the hearing, Mr. Bernstein stated: "Well, actually, Your Honor, we never really entertained the possibility that he would be able to listen to the entire hearing because we thought we would only have video for two hours. But he did consent to give his testimony via the video. I did talk to him about that." February 2nd Transcript at 83:16-21; see also February 3rd Transcript at 4:7-10 (noting that "Mr. Reynolds has indicated his agreement for us to proceed without him being present"). After Mr. Reynolds' appearance at the Evidentiary Hearing, his Emergency Motion was terminated as moot because BOP had, in fact,

–3–

allowed him to appear at the Evidentiary Hearing. MINUTE ORDER denying as moot Dkt. No. 131 Motion to Compel as to JASON TODD REYNOLDS (February 3, 2013) (available on ECF).

In his present Petition, Mr. Reynolds makes a number of distinct claims. First, he alleges that BOP officials fabricated the results of the chickenpox tests in order to prevent him from appearing at the Evidentiary Hearing. He also alleges that, during the Evidentiary Hearing, his BOP case manager, Charles Wilson, disconnected the video feed after Mr. Reynolds had finished testifying, thereby preventing him from participating in the entirety of the Evidentiary Hearing. Petition at 16-17, 20-21. He argues that the cumulative effect of these actions was to deny him an ability to effectively participate in the Evidentiary Hearing, thereby depriving him of his Fifth Amendment right to due process and perpetrating a fraud on the Court. Id. Second, Mr. Reynolds argues that, by disconnecting the video feed, Mr. Wilson violated various constitutional rights held by Mr. Reynolds. Id. at 17-18, 20-21.

Third, he claims that BOP officials deliberately falsified his prison records and, that if these records were corrected, he would be incarcerated for less prison time and eligible for improved conditions of confinement during the remaining time he is incarcerated. Petition at 23-36. Fourth and finally, Mr. Reynolds claims that the Government has not properly responded to a FOIA request he filed, requesting documents related to his incarceration. Petition at 36-38.

## II. CLAIMS UNDER FEDERAL RULE 60

### A. Preliminary Issues

As a preliminary matter, there is some dispute as to what provisions of Rule 60 Mr. Reynolds relies on to bring this petition. *See* Opposition at 6-10. Mr. Reynolds' Petition is

entitled "Petition for Relief Under Federal Rule 60(b) and 60(d)"; but each of those subdivisions contain several different bases on which a court may grant relief.

Having reviewed Mr. Reynolds' Petition, it is readily apparent that he brings his claims regarding the conduct of the Evidentiary Hearing under subsections (b)(3), (b)(4), and (d)(3) of Rule 60. Throughout his filings, Mr. Reynolds repeatedly states that BOP's alleged attempts to prevent his participation in the Evidentiary Hearing were based on willful misrepresentations to the Court that he had chickenpox. This allegation clearly falls within the ambit of Rule 60(b)(3), which allows a court to relieve a party from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," as well as Rule 60(d)(3), which preserves the court's authority to "set aside a judgment for fraud on the court." See Fed. R. Civ. P. 60.

Additionally, Mr. Reynolds repeatedly asserts that, as a result of these misrepresentations to the Court, he was unable to participate in the entirety of the Evidentiary Hearing, and that this violated his Fifth Amendment right to due process. This allegation clearly falls within the ambit of Rule 60(b)(4), which applies "'where a judgment is premised . . . on a violation of due process that deprives a party of notice or the opportunity to be heard.'" United States v. Philip Morris USA Inc., 840 F.3d 844, 850 (D.C. Cir. 2016) (quoting United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271(2010)).

## B. Analysis

### 1. Rule 60(b)(3) – Fraud or Misrepresentation

Mr. Reynolds argues that the BOP sought to prevent him from physically appearing at the Evidentiary Hearing by misrepresenting the results of his medical tests to the Court.

As already noted, Rule 60(b)(3) allows the Court to grant relief due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). The movant must "show actual prejudice," which means that he must demonstrate that the non-movant's actions "prevented him from presenting his case fully and fairly." People for the Ethical Treatment of Animals v. United States Dept. of Health and Human Services, 2017 WL 59079, at *11 (D.D.C. Jan. 5, 2017) (internal quotation marks omitted). Rule 60(c)(3)(1) expressly states that a motion brought pursuant to Rule 60(b)(3) must be made "no more than a year after the entry of the judgment or order" being challenged. Fed. R. Civ. P. 60(c)(3).

The judgment that Mr. Reynolds challenges, the Memorandum Order ruling on his Motion to Vacate under 28 U.S.C. § 2255, was entered on February 19, 2015. [Dkt. No. 140]. However, Mr. Reynolds did not file this Petition until November 2, 2016, well after one year had passed. Accordingly, he cannot seek relief pursuant to Rule 60(b)(3).

### 2. Rule 60(b)(4) – Void Judgment

Mr. Reynolds also argues that by misrepresenting the results of his medical tests and preventing him from physically appearing at the Evidentiary Hearing, BOP deprived him of his right to due process, and consequently, that the judgment is void.

–6–

"Rule 60(b)(4) authorizes relief from a final order if 'the judgment is void.'" Philip Morris, 840 F.3d at 849. "[T]he Supreme Court explained that Rule 60(b)(4) applies 'only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.'" Philip Morris, 840 F.3d at 850 (quoting Espinosa, 559 U.S. at 271). Ordinarily, a judgment will be vacated as void due to a denial of due process where an individual has received no notice of the suit, does not appear, and therefore is deprived of any opportunity to be heard. See generally 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2862 (3d ed.).

Unlike Rule 60(b)(3), "Rule 60(b)(4) motions are not governed by a reasonable time restriction." Bell Helicopter Textron, Inc. v. Islamic Republic of Iran, 734 F.3d 1175, 1179 (D.C. Cir. 2013). "[T]he only question for the court is whether the judgment is void; if it is, relief from it should be granted." Id. (internal citations omitted).

Mr. Reynolds was not deprived of his right to due process when he appeared at the Evidentiary Hearing by video. He had notice of the hearing, made an appearance, and testified. Although Mr. Reynolds was not present for the testimony of any of the other witnesses, the transcripts from the Evidentiary Hearing demonstrate that this was a considered decision made in consultation with his attorney. February 2nd Transcript at 83:16-21; February 3rd Transcript at 4:7-10. Mr. Reynolds' allegation that Mr. Wilson terminated the video feed and refused to allow him to participate in the Evidentiary Hearing after his testimony does not change that conclusion.

Even if true, the transcripts from the Evidentiary Hearing conclusively establish that he and his attorney decided that he would only appear at the Hearing to give his own testimony and would not appear or participate once that testimony concluded. February 2nd Transcript at 83:16-21.

As Mr. Reynolds waived, through his attorney, his appearance for the remainder of the Evidentiary Hearing beyond his own testimony, there was no violation of due process and the judgment was not void. Consequently, his motion under Rule 60(b)(4) must be denied.

### 3. Rule 60(d)(3) – Fraud on the Court

Finally, Mr. Reynolds argues that BOP officials' misrepresented the results of his medical tests to the Court and such misrepresentation constitutes a fraud on the Court.

Rule 60(d)(3) preserves the authority of the court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Fraud on the court ... is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. Fraud upon the court refers only to very unusual cases involving far more than an injury to a single litigant. Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony." Baltia Air Lines, Inc. v. Transaction Mgt., Inc., 98 F.3d 640, 642-43 (D.C. Cir. 1996) (internal citations and quotation marks omitted). "Relief due to fraud on the court is very rarely warranted and is typically confined to the most egregious cases . . . in which the integrity of the court and its ability to function impartially is directly impinged." More v. Lew, 34 F. Supp. 3d 23, 28 (D.D.C. 2014) (internal quotation marks omitted). Unlike a claim of fraud or misrepresentation brought under Rule 60(b)(3), a claim of fraud on the court "exists to protect the integrity of the judicial process," and therefore, "cannot be

time-barred." Bowie v. Maddox, 677 F. Supp. 2d 276, 278–79 (D.D.C. 2010) (internal quotation marks omitted).

Mr. Reynolds cannot meet the high bar required to demonstrate a fraud on the court. Even if the Court were to accept the allegation that BOP officials misrepresented the results of his medical tests—and the evidence Mr. Reynolds submits does not establish that—there is no indication that any officer of the court, such as an attorney representing the Government, was a party to the deception.

Moreover, Mr. Reynolds theory of fraud is refuted by the evidence in the record. Mr. Reynolds argues that BOP officials would not allow him to travel because he purportedly had chickenpox, but that his test results conclusively show that he did not. Petition at 9. This argument misconstrues both the results of the tests and the purported reason he was prevented from traveling to the Evidentiary Hearing. First, while it is true that the test results demonstrate that Mr. Reynolds did not have chickenpox, they also indicated that he lacked immunity to the virus. Exhibit 2 to Petition [Dkt. No. 151-1]. It was this lack of immunity—and the resultant risk that Mr. Reynolds might transmit the chickenpox virus to others if he acquired it from a fellow inmate— which led the BOP to deny him permission to attend the Evidentiary Hearing. Declaration of Travis Haczynski [Dkt. No. 155-2]. Thus, Mr. Reynolds is simply wrong in arguing that BOP officials misrepresented to the Court that he had chickenpox.

As Mr. Reynolds' allegations do not establish a fraud on the court, his motion under Rule 60(d)(3) shall be denied.

## III. OTHER CLAIMS

Mr. Reynolds' claims that Mr. Wilson violated his constitutional rights and that the Department of Justice has violated FOIA are not brought pursuant to Rule 60 because they do not seek relief from a prior judgment of this Court. Instead, the Court will treat them as though they were raised in a complaint, filed pursuant to Rule 7, Fed. R. Civ. P. 7(a)(1), and treat the Government's Opposition as a motion to dismiss under Rule 12, Fed. R. Civ. P. 12(b)(6) or, in the alternative, as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 56.

### A. BIVENS CLAIMS

Mr. Reynolds also attempts to sue his case manager, Mr. Wilson, alleging that Mr. Wilson violated several of his constitutional rights—his right to free speech under the First Amendment, his right to due process under the Fifth Amendment, and his right to confront the witnesses against him under the Sixth Amendment—by terminating the video connection with the Court during the Evidentiary Hearing.

For these claims, he relies on Bivens. In Bivens, the Supreme Court recognized that an implied cause of action may exist against federal officials who violate an individual's constitutional rights. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 389 (1971).

Mr. Reynolds' Bivens claims fail because Mr. Wilson's alleged termination of the video feed could not have violated his constitutional rights.[1] As discussed above, Mr. Reynolds' own

---

[1] Because it is evident that Mr. Reynolds has not even sufficiently alleged a violation of his constitutional rights, it is not necessary to address whether he could bring a claim under Bivens had such a violation occurred. See Minneci v. Pollard, 565 U.S. 118, 122-26 (2012) (noting that

–10–

attorney agreed to the procedure for the Evidentiary Hearing, in which Mr. Reynolds would testify but would not continue to listen or participate after his testimony concluded. Accordingly, even if Mr. Reynolds were correct that Mr. Wilson terminated the video feed and refused to restart it, he fails to state a claim that his constitutional rights were violated. Therefore, his Bivens claims shall be dismissed.

## B. ACCURATE PRISON RECORDS CLAIMS

Mr. Reynolds also alleges that BOP officials have intentionally fabricated his prison records. Moreover, he claims that, as a result of the false information contained in those records, he is unable to participate in drug treatment programs that would reduce the amount of time that he is incarcerated and is ineligible for certain privileges that would improve the conditions of his confinement. The Government argues that Mr. Reynolds may not raise this claim in this Court because he has failed to exhaust his administrative remedies. Opp'n at 19.

The Prison Litigation Reform Act provides that "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Government has promulgated regulations that establish specific procedures for prisoners who wish to challenge the conditions of their confinement. See 28 C.F.R. §§ 542.10-542.19 (collectively known as the "Administrative Remedy Program

---

a Bivens cause of action does not exist for every violation of a constitutional right committed by a federal official).

Regulations"). These regulations govern challenges to numerous aspects of the conditions of a prisoners confinement, including: the computation of credit for time served for a state sentence against her federal sentence, United States v. Wilson, 503 U.S. 329 (1992); the calculation of her restitution payments, United States v. Clark, 953 F. Supp. 2d 80 (D.D.C. 2013); and her ability to live in a manner consistent with her religious faith. Smith v. Director, 412 Fed. Appx. 427 (3d Cir. 2011). The requirement that an inmate exhaust her administrative remedies before bringing a claim in federal district court is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002); see e.g. Clark, 953 F. Supp. 2d at 82; Morton v. Bolyard, 810 F. Supp. 2d 112 (D.D.C. 2011).

The Administrative Remedy Program Regulations govern Mr. Reynolds' claims regarding his prison records and the Government has submitted a sworn declaration from Patrick Kissell, an Administrative Remedy Specialist with the BOP, declaring that Mr. Reynolds has not complied with the requirements of the Administrative Remedy Program Regulations. Exhibit J to Opp'n [Dkt. No. 155-10]. Mr. Reynolds has failed to respond in any way to demonstrate that he has not failed to exhaust his administrative remedies.

Mr. Reynolds fails to allege that he has taken any steps to exhaust his administrative remedies, let alone identify anything that contradicts Mr. Kissell's declaration. Instead, he merely points to the fact that he filed a FOIA request with DOJ and that they responded to that request. However, the fact that he has filed requests for documents under FOIA does not demonstrate that he has exhausted his administrative remedies to have his prison records corrected.

Because Mr. Reynolds failed to exhaust his administrative remedies before seeking to have this Court order the BOP to correct his prison records, this claim shall be dismissed, or in the alternative, summary judgment shall be granted to the Government.[2]

### C. FOIA CLAIMS

Mr. Reynolds also claims that the Department of Justice has not properly responded to a FOIA request that he filed on March 15, 2015. It is apparent from the exhibits Mr. Reynolds attached to his Petition that this issue is presently before another member of this Court. Compare Complaint in Jason T. Reynolds v. Department of Justice, 16-cv-01428-JEB [Dkt. No. 1], with Exhibit 18 [Dkt. No. 151-1]. Accordingly, this Court lacks jurisdiction to hear this claim and it shall be dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Mr. Reynolds Petition is denied in its entirety.

April 19, 2017

*Gladys Kessler*
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF

---

[2] Though not argued by the Government, Mr. Reynolds' failure to exhaust his administrative remedies likely also bars him from bringing his Bivens claims. "[E]xhaustion in cases covered by § 1997e(a) is now mandatory . . . . Thus federal prisoners suing under [Bivens] must first exhaust inmate grievance procedures." Porter, 534 U.S. at 524 (internal citations omitted).

-13-